UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ADAM NOWICKI,

                Plaintiff,

        - against -

NATIONAL RAILROAD PASSENGER
CORP.,

                Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-6209 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Adam Nowicki brings this personal injury action pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, and the Boiler Inspection Act, commonly known as the Locomotive Inspection Act, 49 U.S.C. § 20701, alleging that during the course of his employment with Defendant National Railroad Passenger Corp. ("Amtrak"), he suffered significant injuries while attempting to lift a handle to seal an airtight door. Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons explained below, Defendant's motion is denied.

## BACKGROUND

      Prior to his injury in December 2016, Plaintiff had worked as a locomotive engineer since March 1978, and for Amtrak since April 1984. (Defendant's Rule 56.1 Statement in Support of Summary Judgment ("Def. 56.1"), Dkt. 39, ¶ 1–2; Plaintiff's 56.1(b) Statement in Opposition to Defendant's Motion for Summary Judgment ("Pl. 56.1"), Dkt. 42, ¶ 1–2; Deposition of Adam Nowicki ("Tr.") 31:7–15.[1]) As a locomotive engineer, Plaintiff would inspect the locomotive of

---

[1] Plaintiff's deposition was conducted over the course of two days. The two transcripts, consecutively paginated, are located at Dkts. 38-5 and 38-6.

empty trains after they were cleaned and serviced in Sunnyside Yards, and then take them to Penn Station, where passengers would board. (Pl. 56.1, Dkt. 39, ¶ 4; Def. 56.1, Dkt. 42, ¶¶ 4; Tr. 32:24–33:6, 34:17–18.)  As part of his inspection, Plaintiff would walk through the train's aisleways, check seals, inspect the rear operating cab, then walk back through the aisle to the operating cab, and close and seal the door between the operating cab and the locomotive engine room (the "fire door"). (Tr. 68:19–25, 90:11–91:15.)

In approximately 2015, a new type of locomotive, known as model ACS64, was placed into service.  (Def. 56.1, Dkt. 39, ¶ 5; Pl. 56.1, Dkt. 42, ¶ 41; Deposition of Steven A. Smalls ("Smalls Tr."), Dkt. 38-7, 18:7–11.)  The ACS64 locomotives had a different type of latching mechanism on their fire doors than any other locomotives. (Tr. 43:9–23.)  To close and seal these doors, engineers had to lift up the handle halfway to close the door, then lift it up further to seal it. (*Id.* 78:14–79:19, 81:8–18.)  Plaintiff never received training on how to properly close and seal these doors. (*Id.* 83:3–25.)  As soon as the ACS64s were placed into service, Plaintiff and other engineers began to complain amongst themselves about difficulty latching the doors. (*Id.* 44:4–23, 95:2–16.)  Plaintiff's understanding was that one of his union representatives had reported the complaints to Amtrak. (*Id.* 95:2–16.)  In addition, prior to Plaintiff's injury, a Trainmaster named Steven Smalls overheard engineers complaining about the ACS64's fire door, as discussed in greater detail below. (Smalls Tr., Dkt. 38-7, 25:3–25.)

On December 31, 2016, Plaintiff boarded and inspected Locomotive # 640, a model ACS64. (Def. 56.1, Dkt. 39, ¶¶ 17–18.)  After checking the aisleway, inspecting the non-operating cab, and returning to the operating cab, Plaintiff attempted to close and seal the fire door. (Tr. 71:9–12.) According to Plaintiff, on that day, the fire door handle on Locomotive # 640 was even more difficult to operate than the handles on ACS64s normally were, because it was extra stiff and

2

difficult to close. (Tr. 92:3–18.) While lifting the handle to seal the door, Plaintiff felt a pain in his back and later in his inguinal region, *i.e.*, his groin. (Def. 56.1, Dkt. 39, ¶ 22; Tr. 90:11–91:15.) When Locomotive # 640 arrived at Penn Station, Plaintiff reported his injury to Trainmaster Smalls. (Def. 56.1, Dkt. 39, ¶ 25; Pl. 56.1, Dkt. 42, ¶ 25.) Plaintiff then went to the restroom, identified a small lump on his inguinal area, and was taken to the hospital. (Tr. 91:11-15, 104:18–23.) According to Plaintiff, as a result of the incident, he suffered an inguinal hernia, a herniated disk, and sciatica. (*Id.* 107:11–18, 117:2–23, 129:12–15, 136:15–21.) As a result of his injuries, he could no longer work, and his employment with Amtrak ended on October 2, 2017. (*Id.* 30:22–31:18, 197:5–198:6, 201:20–25, 205:19–206:5.)

Defendant has submitted reports, which Plaintiff does not contest, indicating that inspection records from two days prior to the incident, the day of the incident, and three days after the incident do not indicate any issues related to the fire door or door handle involved in Plaintiff's accident, and that Amtrak had no records related to any defects or servicing of the door on Locomotive # 640. (Def. 56.1, Dkt. 39, ¶¶ 30, 32–33; Pl. 56.1, Dkt. 42, ¶¶ 30, 32–33.) No search was made, however, for complaints of fire door handles on other ACS64 locomotives. (Pl. 56.1, Dkt. 42, ¶ 30.)

As part of discovery in this case, Trainmaster Smalls was deposed. (Smalls Tr., Dkt. 38-7.) Smalls testified that, as part of his employment, he was responsible for "address[ing] all problems and concerns for employees, trains." (*Id.* 9:13–21.) He stated that, "whatever problem comes along, I have to deal with it and then push them -- push the problem to wherever they need to go." (*Id.* 10:14–17.) In that same vein, Smalls testified that his job was to report problems to his supervisors, including mechanical problems, but that when he reported such problems to his supervisors, he generated no reports. (*Id.* 13:23–15:13.) In addition, prior to Plaintiff's injury,

3

Smalls testified that he had heard engineers complain about the fire door handles on the ACS64 locomotives. (*Id.* 25:3–27:5.) As Smalls described it, these engineers did not make a formal complaint, but he overheard the engineers, in effect, making complaints about the ACS64 fire door handles as the engineers stood around talking to each other. (*Id.*) Smalls was not aware of Defendant ever taking any action to address the concerns raised by the engineers.[2] (*Id.* 27:6–14.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (The summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248). "To present a 'genuine' issue of material fact sufficient to defeat a motion for summary judgment, the record must contain contradictory evidence 'such that a reasonable jury could return a verdict for the nonmoving party.'" *Horror Inc. v. Miller*, 15 F.4th 232, 241 (2d Cir. 2021) (quoting *Anderson*, 477 U.S. at 248).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact . . . ." *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016). Once this burden is met, the burden shifts to the nonmoving party to proffer some evidence establishing the existence of a question of material fact that must be resolved at trial. *See Spinelli v. City of*

---

[2] It is not clear from Trainmaster Smalls' testimony if he ever reported the engineers' complaints to a supervisor.

4

*New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003). That is, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002).

"[A]t the summary judgment stage, the district court is not permitted to make credibility determinations or weigh the evidence . . . ." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021). It must "consider the record in the light most favorable to the non-movant" and "resolve all ambiguities and draw all factual inferences in favor of the non-movant 'if there is a "genuine" dispute as to those facts.'" *Loreley*, 13 F.4th at 259 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "[T]he district court may not properly consider the record in piecemeal fashion; rather, it must 'review all of the evidence in the record.'" *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

**LEGAL STANDARDS**

**I.      The Federal Employers' Liability Act ("FELA")**

Under FELA,

> [e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, . . . machinery, track, . . . or other equipment.

45 U.S.C. § 51. FELA is "a broad remedial statute whose objective is to provide a federal remedy for railroad workers who suffer personal injuries as a result of the negligence of their employer" and "is to be liberally construed to achieve that objective." *Greene v. Long Island R.R.*, 280 F.3d

5

224, 229 (2d Cir.2002) (citing *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62 (1987)).  Furthermore, there is a "strong federal policy in favor of letting juries decide cases arising under FELA." *DeRienzo v. Metropolitan Transportation Authority*, 237 F. App'x 642, 644 (2d Cir. 2007) (summary order).  As such, a FELA case "must not be dismissed at the summary judgment phase unless there is absolutely no reasonable basis for a jury to find for the plaintiff." *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824, 828 (2d Cir. 1994).

The elements required to demonstrate negligence under FELA are the same as under the common law: duty, breach, foreseeability, and causation.  *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 87 (2d Cir. 2006).  Under FELA, however, the Plaintiff's burden for establishing each of those elements is relaxed.  *Coale v. Metro-N. Commuter R. Co.*, 621 F. App'x 13, 14 (2d Cir. 2015) (summary order); *Ulfik v. Metro–North Commuter R.R.*, 77 F.3d 54, 58 n. 1 (2d Cir.1996).  As a result, "the quantum of evidence that suffices in FELA cases is significantly lower than in ordinary torts cases." *Nelson v. Metro-N. Commuter R.R.*, 235 F.3d 101, 106 (2d Cir. 2000).  FELA is not a strict liability statute, but jurors are afforded "more latitude to infer negligence than at common law, such that the question can rarely be taken from them and decided by the court as a matter of law." *Coale*, 621 F. App'x at 14.  Ultimately, the right of the jury to pass on the issues of foreseeability, fault, and causality must be "most liberally viewed." *See Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir. 1999); *Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 (2d Cir. 1975).

## II.     The Boiler Inspection Act

The Boiler Inspection Act, commonly known as the Locomotive Inspection Act ("LIA"), provides that:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--

>(1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
>(2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
>(3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.

The LIA does not provide a separate cause of action apart from FELA. *Urie v. Thompson*, 337 U.S. 163, 188 (1949). Instead, showing a violation of the LIA is a way of establishing liability under FELA. *Id.* at 189. While, as discussed, FELA itself is not a strict liability statute, under FELA, a violation of the LIA establishes negligence *per se*. *Id.*; *Traylor v. Metro-N. Commuter R.R.*, No. 01-CV-1237 (FM), 2002 WL 31319923, at *2 (S.D.N.Y. Oct. 16, 2002). As with the elements of negligence under FELA, courts typically conclude that whether a locomotive was "in proper condition" and "safe to operate without unnecessary danger of personal injury" are issues of fact for the jury to decide at trial. *Traylor*, 2002 WL 31319923, at *2 (quoting 49 U.S.C. § 20701) (collecting cases).

## DISCUSSION

Defendant argues that it is entitled to summary judgment because Plaintiff has presented no evidence that Plaintiff's injury was foreseeable. Specifically, Defendant argues that "Plaintiff has failed to demonstrate that Defendant had notice, actual or constructive, that the door in Locomotive # 640 was defective." (Memorandum of Law in Support of its Motion for Summary Judgment ("Def. Mem."), Dkt. 40, at 1.) Plaintiff counters that it has presented evidence of notice, specifically the testimony of Trainmaster Smalls. (Plaintiff's Memorandum of Law in Opposition

to Defendant's Motion for Summary Judgment ("Pl. Mem."), Dkt. 43, at ECF 3–5.[3]) Plaintiff is also quick to point out that Defendant moved for summary judgment based exclusively on lack of notice, but one of Plaintiff's theories of liability is that Defendant violated the LIA, which does not require notice—and which Defendant did not address in its opening brief, never once mentioning the LIA. (*Id.* at 1.) In its reply, Defendant argues that the LIA "was in fact addressed to the extent Defendant demonstrated that there was no defect with respect to the door or door handle," citing a portion of its moving brief discussing the inspection reports. (Reply Memorandum of Law in Further Support of Motion for Summary Judgment ("Def. Reply"), Dkt. 41, at 6.)

Defendant's motion for summary judgment must be denied. Under the standards that apply to FELA and LIA claims, there is ample evidence for a reasonable jury to find that Defendant had notice of the allegedly defective condition, and that Defendant violated the LIA. The Court agrees with Plaintiff that Trainmaster Smalls's testimony defeats summary judgment on the issue of notice under FELA. Smalls testified that part of his job was elevating any problem that "comes along"—including employees' concerns and problems with trains—to his supervisors; and that, prior to Plaintiff's injury, he had heard engineers complain about the fire door handles on ACS64 locomotives being difficult to latch, but was not aware of Amtrak taking any action to deal with this issue. (Smalls Tr. 9:13–21, 10:3–17, 25:3–27:14.)

Defendant argues that Trainmaster Smalls's testimony cannot establish notice as a matter of law because Smalls "could not identify who, where, and when he may have overheard a singular conversation among engineers." (Def. Mem., Dkt. 40, at 10.) Defendant cites no case to support

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

8

the proposition that, because a supervisor cannot remember which employee complained about a defect, where the employee made the complaint, or when it was made, the complaint does not or cannot establish notice. At most, those details (or the lack thereof) go to the weight that the jury might give Smalls's testimony with respect to establishing Defendant's notice, but not whether Plaintiff should be permitted to present that testimony to the jury. Elsewhere in its motion, however, Defendant cites a case from the Northern District of New York for the proposition that, "an employee's 'own vague recollections' of prior complaints are insufficient to permit a reasonable jury to find notice." (*Id.* at 8 (quoting *Haas v. Delaware & Hudson Ry. Co.*, No. 04-CV-1503 (LEK) (RFT), 2007 WL 766324, at *6 (N.D.N.Y. Mar. 8, 2007), *aff'd*, 282 F. App'x 84 (2d Cir. 2008).) Here, however, Plaintiff does not rely on his own recollection, but the recollection of a supervisor who was specifically responsible for reporting to the company problems such as engineers' complaints about the specific defective condition at issue. Based on Smalls's testimony, a reasonable jury could infer that Defendant had actual notice of a defective condition with the fire door handles on the ACS64 locomotives and failed to address the problem, and that, as a result, Plaintiff was injured.[4]

The other cases relied on by Defendant provide no more support for its position. Defendant cites a case from the District of Connecticut for the proposition that "Mr. Smalls'[s] general awareness that the door may have been difficult to use is not enough to establish liability." (*Id.* at

---

[4] To the extent Defendant is arguing that it did not have notice because Trainmaster Smalls never reported the incident to a superior, that argument is unavailing. "[A]n employer breaches its duty under FELA if it knew or should have known of a potential hazard in the workplace, and yet failed to exercise reasonable care to inform and protect its employees." *Williams*, 196 F.3d 402, 406 (2d Cir. 1999). Defendant cannot credibly argue that, because an employee tasked with reporting complaints up the chain of command failed to do so, the requirement that Defendant "knew or should have known" about the potential hazard was not satisfied. To hold otherwise would encourage the type of lax safety procedures that FELA was clearly intended to curb.

9

11 (citing *Coale v. Metro-N. R.R. Co.*, 34 F. Supp. 3d 206, 215 (D. Conn. 2014), *vacated and remanded sub nom. Coale*, 621 F. App'x 13).) In that case—which involved a slip-and-fall—the plaintiff conceded that no one had "directly notified" the defendant of the wet substance, but argued that notice could be inferred by the fact that the defendant had created the dangerous condition. *Coale*, 34 F. Supp. 3d at 215–16.[5] Here, to the contrary, Trainmaster Smalls's testimony indicates—and Plaintiff presumably will argue at trial—that Defendant was "directly notified." Thus, *Coale* does not support a finding that, as a matter of law, Plaintiff cannot demonstrate notice here.

Defendant also, mystifyingly, relies on the Second Circuit's decision in *Burns*, 519 F.2d 512. (Def. Mem., Dkt. 40, at 11–12.) In *Burns*—as Defendant notes—the Second Circuit discussed the Supreme Court case of *Inman v. Baltimore & Ohio Railroad*, 361 U.S. 138 (1959). (*Id.*) *Inman* involved a railroad construction site flagger being injured by a drunk driver. *Inman*, 361 U.S. at 139. A state high court had reversed a jury verdict for the plaintiff, finding that the plaintiff had presented no evidence of foreseeability. *Id.* at 139–40. The Supreme Court affirmed, holding—in language quoted by Defendant—that "the evidence here was so thin that, on a judicial appraisal, the conclusion must be drawn that negligence on the part of the railroad could have played no part in petitioner's injury." *Id.* at 140; (Def. Mem., Dkt. 40, at 11–12). In that case, however, the Court specifically noted that "[t]here [wa]s no evidence of complaint to the railroad." *Inman*, 361 U.S. at 140. The opposite, of course, is true in this case.

---

[5] The district court disagreed, and also found that the plaintiff could not establish liability under a theory of *res ipsa loquitur*. *Coale*, 34 F. Supp. 3d at 216–19. The Second Circuit, in turn, disagreed with the district court, finding that the Court could not have concluded, as a matter of law, that the plaintiff's negligence claim failed on a theory of *res ipsa loquitur*. *Coale*, 621 F. App'x at 15.

10

Furthermore, in *Burns*, the Second Circuit *distinguished Inman* and found that the foreseeability element had been satisfied. *Burns*, 519 F.2d at 514. *Burns* involved a brakeman who was shot and killed while working for the defendant railway company. *Id.* at 513. The district court granted summary judgment, finding the element of foreseeability lacking, and the Second Circuit reversed, noting that "foreseeability of harm is no less a matter generally left to the jury's broad decision than any other part of the requisite proof to recover under the FELA." *Id.* at 514. In distinguishing the case from *Inman*, the Court noted that the defendant had constructive and actual knowledge "of the generally dangerous conditions prevailing in the neighborhood" because of prior incidents of people throwing stones at employees in that area. *Id.* at 514–15. *Burns* is thus of no help to Defendant. Because there is evidence of actual notice in the instant case, it is much more akin to *Burns*, where summary judgment was denied, than to *Inman*, where it was granted.

Although Defendant never clearly frames its position this way, its papers could be read to argue that actual notice of general complaints about ACS64 fire door handles is insufficient to establish notice of the defect in the fire door handle on Locomotive # 640, of which there were no specific complaints on record. (*See, e.g.*, Def. Reply, Dkt. 41, at 2 ("Specifically, Plaintiff fails to demonstrate that the door in Locomotive # 640 was defective or that Defendant had notice, actual or constructive, of the purported defect.").) This argument is unavailing, however, because a reasonable jury could find that complaints about the fire door handles on a particular model of locomotive, *i.e.*, the ACS64, made it reasonably foreseeable that an employee could be injured operating the fire door handle on any ACS64 locomotive, such as Locomotive # 640. Furthermore, the even broader argument that complaints about a generally dangerous condition are legally insufficient to establish the foreseeability of an employee suffering a specific injury as a result of

11

that condition was rejected in *Burns*, where the Second Circuit held that a jury could reasonably find that the defendant railway's knowledge of "the generally dangerous conditions" in the area, based on prior incidents of stone throwing, provided sufficient notice to the defendant that its employee might being killed by a sniper with a rifle. *Burns*, 519 F.2d at 515. Accordingly, Defendant has simply not satisfied its burden of demonstrating that it is entitled to judgment as a matter of law on the issue of foreseeability.[6]

Defendant also fails to demonstrate that it is entitled to judgment as a matter of law on the issue of whether it violated the LIA. Defendant asserts that the declarations and inspection reports stating that "the subject door and door handle were in proper condition and safe to operate without unnecessary danger of personal injury" entitle it to summary judgment.[7] (*See* Def. Reply, Dkt. 41, at 6.) The Court disagrees.

Whether Locomotive # 640 was "in proper condition" and "safe to operate without unnecessary danger of personal injury" is an issue of fact for the jury to decide at trial, and should not be decided solely on the basis of Defendant's evidence where there exists contrary, admissible

---

[6] In a throwaway argument, Defendant also asserts that "[e]ven if Mr. Smalls'[s] vague recollection was sufficient [to establish] notice, Defendant acted reasonably in its daily inspections of the door in Locomotive # 640." (Def. Reply, Dkt. 41, at 6; *see also* Def. Mem., Dkt. 40, at 11.) Defendant, however, cites no authority for the proposition that such daily inspections would, as a matter of law, defeat a claim of negligence, especially where an employer had notice of a defective condition, but failed to prevent or mitigate the risk of injury from it. Because Defendant has provided no evidence that it took any action in response to the complaints that Trainmaster Smalls heard about the ACS64 fire door handles (or that Smalls even reported them to a supervisor), there is a material dispute about whether Defendant acted reasonably in response to those complaints, and a reasonable jury could find that it did not.

[7] Defendant argues that Plaintiff has presented no evidence to dispute its declarations and inspection reports. (Def. Reply, Dkt. 41, at 6.) However, Plaintiff had no opportunity to respond to that argument, since Defendant did not raise it with respect to the LIA until its reply brief. This was procedurally improper. *Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007) (collecting cases), *aff'd*, 288 F. App'x 721 (2d Cir. 2008). In any event, as discussed below, Defendant is incorrect.

12

evidence. *See Traylor*, 2002 WL 31319923, at *2 (noting that whether a locomotive was "'in proper condition" and "safe to operate without unnecessary danger of personal injury" are issues of fact for the jury to decide at trial (quoting 49 U.S.C. § 20701)). Here, the jury could reasonably find that both Plaintiff's and Trainmaster Smalls's testimony demonstrate that the fire door handles on ACS64 locomotives generally, and on Locomotive # 640 specifically, were not "safe to operate without unnecessary danger of personal injury." *See* 49 U.S.C. § 20701. As such, this material fact is disputed, and summary judgment is inappropriate.

Defendant cites a Montana Supreme Court decision for the proposition that the inquiry under the LIA should be focused on whether the allegedly unsafe locomotive part operated as intended, and that Plaintiff "never once . . . claim[ed] that the door or door handle did not operate as it intended" because he did "not present testimony that the door did not close or seal." (Def. Reply, Dkt. 41, at 8 (citing *Weber v. BNSF Ry. Co.*, 362 Mont. 53, 59–60 (2011)).) The Court finds this argument preposterous. While the primary purpose of a door handle may be to secure a door, if normal use of that door handle causes the user to suffer an inguinal hernia, dislocated disk, and sciatica, it would be absurd to characterize that door as "operat[ing] as it intended." Defendant's argument attempts to write out of the statute the requirement that every locomotive part must be "safe to operate without unnecessary danger of personal injury." *See* 49 U.S.C. § 20701. Defendant's argument on the LIA merely highlights the fact that there are material issues of fact in this case that should be submitted to a jury, and thus summary judgment would be inappropriate, particularly under FELA.

## CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment is denied. By May 30, 2022, the parties shall submit a Joint Pretrial Order that complies with the Court's Individual Practices and Rules.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 28, 2022
       Brooklyn, New York